## Moore v Greystone Props. 81 LLC

2024 NY Slip Op 31112(U)

April 3, 2024

Supreme Court, New York County

Docket Number: Index No. 154133/2017

Judge: Alexander M. Tisch

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    HON. ALEXANDER M. TISCH      PART   18

*Justice*

---------------------------------------------------------------X

RAYMOND MOORE and PETER DIMARIO,

             Plaintiffs,

         - v -

GREYSTONE PROPERTIES 81 LLC,

            Defendant.

---------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 154133/2017 |
| MOTION DATE | 04/14/2021 |
| MOTION SEQ. NO. | 002 |

## DECISION + ORDER ON MOTION

The following e-filed documents, listed by NYSCEF document number (Motion 002) 3, 31, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 107, 108, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 163

were read on this motion to/for        JUDGMENT - SUMMARY        .

## BACKGROUND

According to the May 4, 2017, complaint (NYSCEF Doc. No. 97), plaintiffs have rented Apartment 43 at 158 West 81st Street in Manhattan from defendant since March 15, 2012. Their initial rent was $2,750 per month, pursuant to a lease that stated the apartment was not subject to rent stabilization or any other relevant law or regulation (2012 Lease, attached as Exhibit A to Aff of Anne Goldrach, NYSCEF Doc. No. 80, although the 2012 Lease has a cover letter referring to it as a "New Lease Renewal"). The complaint explains that, between 2013 and 2017, plaintiffs' monthly rent was increased annually, to $3,100, $3,300, $3,450, $3,600, and finally to $3,636 in 2017. However, plaintiffs assert that "[u]pon review of the records of the Division of Housing and Community Renewal ('DHCR'), other New York City Agency records, and review of the facts . . . the apartment is subject to Rent Stabilization, and was never properly removed from said status or deregulated based on lawful rent increases" (Complaint, ¶ 9). More

154133/2017 MOORE, RAYMOND vs. GREYSTONE PROPERTIES 81 LLC
Motion No. 002

Page 1 of 12

[* 1]

specifically, plaintiffs pointed out that the last lease registered with DHCR had been to a tenant named David Turner in 1997 for $972.51 per month. Plaintiffs' 2017 complaint alleges they were overcharged both for the rent and for the initial security deposit, the latter in violation of General Obligations Law § 7-103.

Plaintiffs assert causes of action for (1) a declaratory judgment pursuant to CPLR 3001 that the Apartment is subject to the Rent Stabilization Code and directing the defendant to issue the plaintiffs a rent stabilized lease at the legal regulated rent; (2) an injunction directing defendant to issue a rent stabilized lease to plaintiffs; (3) money damages for overcharged rent from the entire length of their lease of the Apartment; (4) treble damages for the overcharged rent, as defendant's conduct was willful; (5) punitive damages; and (6) plaintiffs' legal fees. Defendant generally contends the Apartment had been deregulated before plaintiffs moved in, despite defendant's failure to file with DHCR for deregulation of the apartment, because the legal regulated monthly rent for a prior tenant had reached $2,000. Defendants also argue the rent stabilization law does not provide for punitive damages.

Around January 18, 2018, defendant moved to dismiss the complaint pursuant to CPLR §§ 3211 (a) (1) and (a) (7). The Court granted the motion, concluding that the apartment's rent "exceeded the deregulation threshold at the time plaintiffs took occupancy and this claim is barred by the four[-]year statute of limitations" (NYSCEF Doc. No. 99). The Appellate Division, First Department reversed concluding that "defendant landlord only showed its entitlement to collect the last registered rent for the subject apartment (i.e., $972.51 in 1998), as it failed to comply with the rent registration requirements . . . . and did not demonstrate what increases, if any, it may be entitled to as a legal regulated rent for the apartment" (*Moore v Greystone Props. 81 LLC*, 176 AD3d 516, 516 [1st Dept 2019] [internal citations omitted]). The

154133/2017  MOORE, RAYMOND vs. GREYSTONE PROPERTIES 81 LLC
Motion No. 002

Page 2 of 12

[* 2]

First Department further concluded that plaintiffs' claims for rent overcharges and treble damages were timely under CPLR 213-a and remitted the case to this Court (*id.*).

Now, defendant moves for summary judgment on all claims and the plaintiffs cross-move for summary judgment on the questions of rent stabilization and rent overcharge, treble damages, and legal fees, along with other relief.

## DISCUSSION

Summary judgment is a drastic remedy which will be granted only when the party seeking summary judgment has established that there are no triable issues of fact (*see* CPLR 3212 [b]; *Alvarez v Prospect Hosp.*, 68 NY2d 329 [1986]; *Sillman v Twentieth Century-Fox Film Corporation*, 3 NY2d 395 [1957]). To prevail, the party seeking summary judgment must make a *prima facie* showing of entitlement to judgment as a matter of law tendering evidentiary proof in admissible form, which may include deposition transcripts and other proof annexed to an attorney's affirmation (*see Alvarez v Prospect Hosp., supra; Olan v Farrell Lines*, 64 NY2d 1092 [1985]; *Zuckerman v City of New York*, 49 NY2d 557 [1980]). Absent a sufficient showing, the court should deny the motion without regard to the strength of the opposing papers (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851 [1985]).

Once the initial showing has been made, the burden shifts to the party opposing the motion for summary judgment to rebut the prima facie showing by producing evidentiary proof in admissible form sufficient to require a trial of material issues of fact (*see Kaufman v Silver*, 90 NY2d 204, 208 [1997]). Although the court must carefully scrutinize the motion papers in a light most favorable to the party opposing the motion and must give that party the benefit of every favorable inference (*see Negri v Stop & Shop*, 65 NY2d 625 [1985]) and summary judgment should be denied where there is any doubt as to the existence of a triable issue of fact

**154133/2017   MOORE, RAYMOND vs. GREYSTONE PROPERTIES 81 LLC**
**Motion No. 002**

**Page 3 of 12**

3 of 12

[* 3]

(*see Rotuba Extruders, v Ceppos,* 46 NY2d 223, 231 [1978]), and bald, conclusory assertions or speculation and "[a] shadowy semblance of an issue" are insufficient to defeat a summary judgment motion (*S.J. Capalin Assoc. v Globe Mfg. Corp.*, 34 NY2d 338, 341 [1974]; *see Zuckerman v City of New York, supra; Ehrlich v American Moninger Greenhouse Mfg. Corp.*, 26 NY2d 255, 259 [1970]).

Lastly, "[a] motion for summary judgment should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility" (*Ruiz v Griffin,* 71 AD3d 1112 [2d Dept 2010], quoting *Scott v Long Is. Power Auth.,* 294 AD2d 348 [2d Dept 2002]).

### Defendant's *Prima Facie* Case

In its motion, defendant contends the claims are untimely as CPLR § 213-a, as it existed at the time this action commenced, limited rent actions to a four-year lookback period. Substantively, defendant argues the apartment was properly deregulated and the rents charged the plaintiffs were legitimate. Defendant submits copies of a rent-stabilized lease and a renewal lease to someone after David Turner (who was the tenant in 1997), tenant Cheryl Hunter (NYSCEF Doc. No. 84-85). Hunter's rent under the 2000-2002 renewal lease was $2101.34 (NYSCEF Doc. No. 85). It is undisputed that, at the time, luxury deregulation was allowed when the rent for an apartment exceeded $2000 (*see* fact-sheet-36-02-2020.pdf [ny.gov][1]). Defendant justifies the increase from $972.51 to $2101.34 by stating that defendant was entitled to a longevity bonus of $81.69, a two-year vacancy lease increase of 20%, or $194.50, and an Individual Apartment Improvement (IAI) increase of $811.44. In support of this last increase, defendant submits 77 pages of bills, purchase orders, and canceled checks (NYSCEF Doc. No.

---

[1] Available at https://hcr.ny.gov/system/files/documents/2020/11/fact-sheet-36-02-2020.pdf

**154133/2017   MOORE, RAYMOND vs. GREYSTONE PROPERTIES 81 LLC**
**Motion No.  002**

**Page 4 of 12**

83). Defendant further states that the apartment was vacant in 2002 and 2003 and that the next tenant, Evan Hirsch, with a lease dated August 8, 2002, paid $2,100 per month in rent under a lease that stated the apartment was not subject to rent stabilization (First Hirsch Lease, NYSCEF Doc. No. 86). Defendant also provides copies of subsequent tenants' non-rent-stabilized leases (NYSCEF Doc. Nos. 85-93). Defendant has made a *prima facie* case that the apartment was deregulated and it was entitled to charge the rent it charged plaintiffs. The burden then shifts to the plaintiffs.

**Timeliness**

The Court first addresses the threshold issue that the challenge is untimely. Under the law that existed prior to 2019,

> "[a]n action on a residential rent overcharge shall be commenced within four years of the first overcharge alleged and no determination of an overcharge and no award or calculation of an award of the amount of any overcharge may be based upon an overcharge having occurred more than four years before the action is commenced. This section shall preclude examination of the rental history of the housing accommodation prior to the four-year period immediately preceding the commencement of the action" (CPLR 213-a [2012]).

Therefore, "absent fraud, an overcharge was to be calculated by using the rent charged on the date four years prior to filing of the overcharge complaint (the lookback period) as the 'base date rent'" (*Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal*, 35 NY3d 332, 348 [2020] [*Regina*]).

Part F of the Housing Stability and Tenant Protection Act of 2019 (HSTPA) extended the lookback period to six years. In its 2019 decision in this case, the First Department applied the new six-year lookback period (*see Moore v Greystone Props. 81 LLC*, 176 AD3d at 516). The following year, however, the Court of Appeals in *Regina* held that the six-year period did not

154133/2017 MOORE, RAYMOND vs. GREYSTONE PROPERTIES 81 LLC
Motion No. 002

Page 5 of 12

5 of 12

apply retroactively (*see Matter of Regina Metro. Co., LLC*, 35 NY3d at 349-350, 361). Therefore, the 2012 version of the limitations period applies to the case at hand (*see Matter of Bazan v New York State Div. of Hous. & Community Renewal*, 189 AD3d 495, 496 [1st Dept 2020]).[2] By its terms, the limitations period "commences to run with the first overcharge alleged" (*Matter of Brinckerhoff v New York State Div. of Hous. & Community Renewal*, 275 AD2d 622, 622 [1st Dept 2000] [internal quotation marks and citation omitted]).

Plaintiffs' complaint is dated May 4, 2017. Four years earlier, plaintiffs were the tenants of record under a lease dated March 15, 2012, for rent of $2,750 per month, over the deregulation threshold (*see* Complaint, NYSCEF Doc. No. 97, ¶ 4; Plaintiffs' Lease, NYSCEF Doc. No. 80, ¶ 3). According to the complaint, plaintiffs renewed their lease on April 1, 2013, at a rent of $3,100 per month (Complaint, ¶ 5). Further, plaintiffs' leases consistently have stated the apartment is not subject to rent stabilization. Under the four-year limitations period, therefore, the defendant's motion for summary judgment dismissing the suit should be granted, the plaintiffs' cross-motion for summary judgment should be denied, and the suit should be dismissed as untimely.

**Fraud**

Only if there was evidence that defendant "engaged in a fraudulent scheme to deregulate" the apartment can the Court go beyond the four-year limitations period when it examines the apartment's rental history (*Nolte v Bridgeston Assoc. LLC*, 167 AD3d 498, 498 [1st Dept 2018] [applying pre-HSTPA law]). In their opposition and in support of their cross-motion,[3] plaintiffs

---

[2] Due to *Regina*, the First Department's order in *Moore* is not binding on this issue.

[3] Plaintiffs argue that they should prevail on their claim regardless of whether the Court applies the HSTPA, with its six-year lookback period, or the four-year limitations period that existed before its enactment. However, because of the ruling in *Regina*, this Court only evaluates the pre-HSTPA law for this purpose (*see Regina*, 35 NY3d at 349-350, 361).

154133/2017   MOORE, RAYMOND vs. GREYSTONE PROPERTIES 81 LLC
Motion No. 002

Page 6 of 12

[* 6]

stress that the Court is not limited by the four-year lookback period when a landlord has engaged in fraud (*Vendaval Realty, LLC v Felder*, 67 Misc. 3d 145 [A], 2020 NY Slip Op 50786 [U], *1-2 [App Term, 1st Dept 2020]). Plaintiffs argue, "[t]here is compelling indicia of fraud" here, and the court should examine the entire rental history (NYSCEF Doc. No. 110, ¶ 34).

"Fraud consists of evidence of a representation of material fact, falsity, scienter, reliance and injury" (*Regina Metro. Co., LLC v New York State Div. of Hous. and Community Renewal*, 35 NY3d 332, 426 [2020] *quoting Vermeer Owners v Guterman*, 78 NY2d 1114, 1116 [1991]; *see e.g. Ambac Assur. Corp. v Countrywide Home Loans, Inc.*, 31 NY3d 569 [2018]; *Pasternack v Laboratory Corp. of Am. Holdings*, 27 NY3d 817, 827 [2016]). "An increase in rent and failure to register the apartment with [DHCR], standing alone, are insufficient to establish a colorable claim of a fraudulent scheme to deregulate the apartment (*Ampim v 160 E. 48th St. Owner II LLC*, 208 AD3d 1085, 1085-1086 [1st Dept 2022]; *accord Hess v EDR Assets LLC*, 217 AD3d 542, 543 [1st Dept 2023]). Plaintiffs have not provided sufficient additional evidence to satisfy their burden and make a *prima facie* case of fraud. Plaintiffs contend that the defendant "clearly . . . removed the Premises from rent regulation" in approximately 1997 and that the subsequent registrations showing an "RS" designation, reflecting that the Premises' status remained "Rent stabilized" were incorrect (Aff of Ronald D. Hariri, NYSCEF Doc. No. 110, ¶ 15) and simultaneously take the position that the RS designation on the recent filings was correct and the defendant engaged in fraud in 1997 by "remov[ing] the Premises from rent stabilization" (*id.*, ¶ 34). Plaintiffs rely on *Vendaval* (67 Misc 3d 145 [A] at *2 ), but that case is distinguishable, as that court had found that fraud existed, not simply because the landlord did not inform renters that the apartment was rent stabilized and failed to file timely registrations, but

**154133/2017 MOORE, RAYMOND vs. GREYSTONE PROPERTIES 81 LLC**
**Motion No. 002**

**Page 7 of 12**

7 of 12

[* 7]

because "the documentary proof otherwise reveal[ed] a pattern of unsubstantiated and unexplained increases in rent." That is not the situation in the instant matter.

Plaintiffs' reliance on other caselaw is similarly unpersuasive. In *Similis Mgt. LLC v Dzganiya* (71 Misc 3d 129 [A], 2021 NY Slip Op 50245 [U] [App Term, 1st Dept 2021]), the Appellate Term, First Department, found triable issues of fact with respect to the question of fraud because of the size of the rent increase, which may have been as much as 73% in a single year but was falsely reported as spread over several years, the extremely limited evidence substantiating the landlord's claim of improvements meriting increases, and the landlord's failure to provide a lease rider explaining how it had computed the rent. Here, defendant has provided extensive evidence of the improvements and there is no evidence that the prior leases were not legitimate. The vacancy lease defendant issued to Hunter, moreover, contained the requisite rider explaining how the landlord had computed the new rent (*see* Hunter 1998 Lease, attached as Exhibit E to Goldrach Aff., NYSCEF Doc. No. 84, ¶ 4 of Rider and Rider end note). The ruling in *Sandlow v 305 Riverside Corp.* (69 Misc 3d 893 [Sup Ct, NY County 2020], *affd as mod* 201 AD3d 418 [1st Dept 2022]) on which plaintiffs also rely, is not relevant because after plaintiffs submitted their papers that decision was modified by the First Department, which determined that there was no showing of fraud (*see Sandlow v 305 Riverside Corp.*, 201 AD3d 418).

**Evidence of Improvements**

As far as plaintiffs challenge defendant's assessments of IAIs and major capital improvements (MCIs), the law in effect when defendant assessed the IAI increases states:

> "Any claimed MCI or individual apartment improvement cost must
> be supported by adequate documentation which should include at
> least one of the following: 1) Cancelled check(s) contemporaneous

154133/2017  MOORE, RAYMOND vs. GREYSTONE PROPERTIES 81 LLC
Motion No. 002

Page 8 of 12

[* 8]

with the completion of the work; 2) Invoice receipt marked paid in full contemporaneous with the completion of the work; 3) Signed contract agreement; 4) Contractor's affidavit indicating that the installation was completed and paid in full. Whenever it is found that a claimed cost warrants further inquiry, the processor may request that the owner provide additional documentation. . . . Where proof is not adequately substantiated, the difference between the claimed cost and the substantiated cost will be disallowed" (DHCR Policy Statement 90-10 [June 26,1990]).

As stated above, to show that work was performed for apartment 43, defendant has submitted a 77-page exhibit including copies of purchase orders, invoices, and checks from late 1997 and early 1998. These evidence substantial work being done on the apartment during the period in question.[4]

In their challenge to the IAIs, plaintiffs file a letter from defendant dated September 6, 2017, in which defendant stated that DHCR granted a $10.02 increase per room per month for the installation of apartment entry doors and common area windows (NYSCEF Doc. No. 124). However, the September 2017 letter does not support plaintiffs' position. Instead, it addresses an MCI application defendant submitted on December 20, 2016, for building-wide improvements including the replacement of all apartment doors and of the windows in the common areas. There is no indication that the referenced MCI application is related to the IAI increases defendant assessed 18 years earlier in the Hunter lease. Further, although DHCR denied a

---

[4] The Court notes that there were duplicate copies of one bill, for $109.82 (NYSCEF Doc. No. 83, *16-17, 75-77), and that some of the pages were unreadable in part. However, the duplicate amount is de minimis, and the unreadable pages generally were accompanied by other documents, such as invoices and canceled checks, that adequately substantiated the amounts claimed. Therefore, these problems "do not constitute indicia of fraud" (*Matter of Haskin v New York State Div. of Hous. & Community Renewal*, 203 AD3d 603, 604 [1st Dept 2022]; *see also Begium v Mateo Prods., Inc.*, 138 AD3d 479, 480 [1st Dept 2016] [gaps in defendant's evidence had not justified granting of cross-motion for summary judgment]). This is especially true as the rent stabilization laws do not require the landlord to maintain IAI records indefinitely (*see Fuentes v Kwik Realty LLC*, 186 AD3d 435, 438 [1st Dept 2020]).

**154133/2017  MOORE, RAYMOND vs. GREYSTONE PROPERTIES 81 LLC**
**Motion No.  002**

Page 9 of 12

9 of 12

portion of the application, defendant sent plaintiffs the DHCR decision, by which it apparently abided.

As a further challenge to the IAIs, plaintiffs file the affidavit of Gary Horowitz, who states he is a licensed architect and he inspected the premises on March 28, 2017, at plaintiffs' request (NYSCEF Doc. No. 121).[5] Horowitz opines the improvements would have cost $12,000, rather than $32,457.60, and that defendant performed the work around 1991. He states that, in 1991, the kitchen renovations would have cost $118.00 per square foot and the bathroom renovations would have cost $30.00 per square foot. He contends that no other renovations occurred in 1998, and notes that he did not find any building permits for electrical or plumbing work. Plaintiffs contend that the Horowitz affidavit establishes the claimed increases were fraudulent.

The Court concludes that the Horowitz affidavit – only one page of which discusses the architect's conclusions – is insufficient to create an issue of fact in opposition to defendant's evidentiary support. Other than stating that the cabinets, appliances, floors, and fixtures "appear to have been renovated circa 1991" (NYSCEF Doc. No. 121, ¶ 9 [a], *see* ¶ 9 [b] ["looks to have last been renovated . . ."]), Horowitz does not explain his conclusion that the improvements occurred in 1991, when all the bills and other evidentiary support relate to work done in 1997 and 1998 and when he did not inspect the apartment until 2017 (*see Rios Cruz v Mall Props., Inc.*, 145 AD3d 463, 463 [1st Dept 2016] [finding that engineer's report "was of little probative value" where inspection of accident site occurred years after the accident in question]). He provides only conclusory assertions regarding the basis of his knowledge and cites no pertinent guidelines (*see Acosta v Consolidated Edison Co. of N.Y., Inc.*, 117 AD3d 475, 476 [1st Dept

---

[5] Plaintiffs did not file a copy of Horowitz's curriculum vitae with this motion, but the Court was able to locate it in the file for defendant's earlier motion to dismiss (NYSCEF Doc. No. 31).

**154133/2017  MOORE, RAYMOND vs. GREYSTONE PROPERTIES 81 LLC**
**Motion No. 002**

Page 10 of 12

2014]; *Sarmiento v C & E Assoc.*, 40 AD3d 524, 526 [1st Dept 2007] [failure to cite to standards that support expert assertions rendered affidavit inadequate]). Even had his testimony been credible, his assessment of the cost "does not prove that the work was not performed" (*Sandlow*, 201 AD3d at 420). Also, Horowitz does not describe his records search other than to say that it was "diligent" (NYSCEF Doc. No. 121, ¶ 7).

Plaintiffs also argue that because defendant did not file an updated rent registration statement with DHCR, leaving DHCR's records reflecting a last stabilized rent of $972.51 per month, the rent should be frozen at that amount (*see* Rent Stabilization Code § 2524 [a]). However, defendant filed a rent registration statement with DHCR on March 3, 2021 (NYSCEF Doc. No. 94). Under Rent Stabilization Code (RSC § 2528.4), the rent is retroactively unfrozen upon the filing a proper registration when "increases in the legal regulated rent were lawful except for the failure to file a timely registration" (*Grady v Hessert Realty, L.P.*, 178 AD3d 401, 404 [1st Dept 2019] [internal quotation marks and citation omitted]; *see Matter of Cardona v New York State Div. of Hous. & Community Renewal*, 214 AD2d 393, 394 [1st Dept 1995] [determining that the subsequent filing of rent registration statements "prospectively eliminate[]" the rent freeze]). Plaintiffs' argument that the 2021 registration statement refers to all the tenants as "rent stabilized" is also unpersuasive. However, plaintiffs misunderstand the import of the registration requirement. Once the apartment is exempt from rent stabilization, it does not matter if the "landlord subsequently mistakenly registered the apartment as stabilized" because rent stabilization status is governed by statute (*3505 BWAY Owner LLC v McNeely*, 72 Misc 3d 1, 4 [App Term 1st Dept 2021]). Further, a mere failure to comply with Department of Buildings requirements "[does] not establish a sufficient indicia of fraud" (*Bazan*, 189 AD3d at 496).

154133/2017   MOORE, RAYMOND vs. GREYSTONE PROPERTIES 81 LLC
Motion No. 002

Page 11 of 12

## CONCLUSION

For the reasons above, the Court grants the defendant's motion and dismisses the complaint. The Court, for the same reasons, denies plaintiffs' cross-motion for summary judgment. The Court has considered all of the parties' remaining arguments and finds them without merit.

Accordingly, it is

ORDERED that defendant's motion for summary judgment is granted and the action is dismissed with costs and disbursements to defendant as taxed by the Clerk upon the submission of an appropriate bill of costs; and it is further

ORDERED that plaintiffs' cross-motion for summary judgment is denied; and it is further

ORDERED that the Clerk is directed to enter judgment accordingly.

| 4/3/2024 | | | ALEXANDER M. TISCH, J.S.C. | |
|---|---|---|---|---|
| DATE | | | | |
| CHECK ONE: | X CASE DISPOSED | | NON-FINAL DISPOSITION | |
| | X GRANTED | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

154133/2017  MOORE, RAYMOND vs. GREYSTONE PROPERTIES 81 LLC
Motion No. 002

Page 12 of 12

12 of 12